IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JEFFREY EASTMAN,<br>#S12167, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 18−cv–602−SMY |
| vs. | ) ) | |
| VENERIO SANTOS,<br>ROBERT MUELLER,<br>WARDEN KINK,<br>WARDEN STOCK,<br>LISA KREBS,<br>SGT. DOWNES,<br>MAJOR JOHNSON,<br>MAJOR MCABEE,<br>WALKER,<br>DEBORAH ZELASKO,<br>ROBERT WEGMAN,<br>ANN LAHR,<br>WEXFORD HEALTH, and<br>ILLINOIS DEPARTMENT OF<br>CORRECTIONS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This case was severed on March 23, 2018, from *Eastman v. Doe, et al.*, Case No. 18-cv-543-DRH-DGW (S.D. Ill.). (Doc. 2). It contains the claims designated as Counts 3 through 5 in the original case, described as follows:

**Count 3 –** Santos, Mueller, Kink, Stock, Krebs, Downes, Johnson, McAbee, Walker, Zelasko, Wegman, Lahr, Wexford, and IDOC showed deliberate indifference to Plaintiff's serious medical need involving a deformity and arthritis in his feet and pain associated therewith in violation of the Eighth Amendment.

1

**Count 4 –**   Santos, Mueller, Kink, Stock, Krebs, Downes, Johnson, McAbee, Walker, Zelasko, Wegman, Lahr, Wexford, and IDOC committed Illinois medical malpractice/negligence in their treatment or handling of a deformity and arthritis in Plaintiff's feet and pain associated therewith.

**Count 5 –**   IDOC violated the Americans with Disabilities Act and the Rehabilitation Act by failing to accommodate Plaintiff's needs related to a deformity and arthritis in his feet.

Plaintiff's claims, which pertain to his incarceration at Centralia Correctional Center ("Centralia") are now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks money damages from a defendant who by law is immune from such relief, must be dismissed. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*,

631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. However, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

Plaintiff's factual allegations relating to Counts 3 through 5 are summarized below.

Plaintiff was born with a medical condition that causes the bones of his feet and ankles to collapse out of alignment when weight is put on them. (Doc. 1, p. 24). This misalignment and malformation causes Plaintiff's bones to bear weight in an unnatural way, and as a result, Plaintiff has difficulty walking. *Id*. This condition "causes extreme pain and discomfort that is only alleviated if [Plaintiff is] wearing braces that hold the ankles and feet in correct alignment." *Id*. Plaintiff suffers from three types of pain: stabbing pain when he puts weight on his feet and ankles without corrective footwear; a dull, throbbing, burning pain that started in February 2015 and continues; and a sharp, sudden, stabbing, debilitating pain that began in March 2016 and occurs without warning when Plaintiff does not have something to support himself with, such as a cane. *Id*. This pain has caused Plaintiff to fall many times. *Id*.

As a child, Plaintiff wore custom-fitted orthopedic braces until he was approximately 12-years old. *Id*. While Plaintiff was imprisoned at Big Muddy Correctional Center, a physician prescribed him foam insoles, which he received August 20, 2014. *Id*. After he was transferred to Centralia, Plaintiff received medical lay-ins after suffering injuries on March 5, 2016 and April 11, 2016. *Id*. Dr. Santos issued Plaintiff the same type of foam insoles on March 5, 2016

after his first injury. *Id.* Dr. Santos ordered an X-ray after the April 11, 2016 injury. *Id.* The X-ray "showed the presence and progression of permanent damage/arthritis in the same areas affected by [Plaintiff's] medical condition." *Id.*

Dr. Garcia issued Plaintiff a slow-walker pass on September 21, 2016 and prescribed Plaintiff ACE wraps. *Id.* On October 26, 2016, Garcia renewed the slow-walker pass and issued Plaintiff a "No Prolonged Standing Order." *Id.* On November 9, 2016, Garcia referred Plaintiff back to Dr. Santos for orthopedic shoes, but Santos denied them. *Id.* Garcia recommended orthopedic shoes on March 15, 2017. *Id.* Santos issued Plaintiff AFO braces on July 3, 2017, which Plaintiff received on July 17, 2017. *Id.* Santos also issued Plaintiff gel insoles on August 18, 2017. (Doc. 1, p. 25). Dr. Baker issued Plaintiff a cane and ordered X-rays on September 22, 2017. *Id.* These X-rays showed "bi-lateral flat feet deformity." Baker ordered lace-up ankle supports on November 28, 2017, which Plaintiff received on February 8, 2018. *Id.*

None of the medical devices issued by the Illinois Department of Corrections ("IDOC") and Wexford have any corrective ability. *Id.* The insoles and gel do not provide ankle support or correct the ankles or arches. *Id.* The AFO braces are not designed for Plaintiff's medical condition and do not correct his bone alignment. *Id.* The ACE wraps are also not corrective, but instead "simply wrap around the foot." *Id.* The lace-up supports provide stiff support for Plaintiff's ankles but do not correct the alignment of his ankles or arches and "so are ineffective against [his] medical condition." *Id.*

Plaintiff also alleges that Dr. Santos refused him pain medication on two separate occasions. *Id.* During every visit with Santos after his March 5, 2016 fall (on at least 11 occasions), Plaintiff asked for and was denied a mobility aid to prevent falls, orthopedic shoes and an exam with an orthopedic specialist. *Id.* Even after Dr. Garcia recommended orthopedic

shoes and after Plaintiff complained of falls, Santos insisted on issuing Plaintiff foam insoles knowing that he was already wearing the same insoles when he was injured. *Id.* Santos also would not schedule Plaintiff for any type of rehabilitation services after discovering that Plaintiff had arthritis. *Id.*

Lisa Krebs, the Health Care Unit administrator, refused to intervene and allow Plaintiff to be seen by an orthopedic specialist. *Id.* She also refused to investigate Plaintiff's claims of ineffective treatment, and she lied in her written response to Plaintiff, which was later used to deny Plaintiff relief in a grievance. *Id.*

Warden Mueller failed to investigate Plaintiff's claims of medical malpractice and deliberate indifference against Santos, as well as Plaintiff's claims "of medical device interference by a black box device against Majors Johnson and McAbee." (Doc. 1, p. 26). He also refused to intervene and stop these alleged abuses. *Id.* Warden Kink and Warden Stock also refused to investigate Plaintiff's claims of medical device interference by a black box device, and to intervene and stop these alleged abuses. *Id.*

Sgt. Downes forced Plaintiff to stand against medical orders, "resulting in 11 falls and near-falls, and he also sadistically laughed about a comment he made of 'kicking [Plaintiff's] legs out from under [him].'" *Id.* He could have allowed Plaintiff to sit down at a stone bench feet away from where he was standing. *Id.*

Majors Johnson and McAbee ignored Plaintiff's medical needs by forcing him to wear a black box device although it prevented Plaintiff from being able to use his cane. *Id.* They also refused to swap the black box for waist chains, which would have allowed Plaintiff to use his cane, or the cane for a wheelchair, which would have enabled the black box device to be used. *Id.* These solutions would have prevented unnecessary pain and suffering. *Id.* Plaintiff had a

"near-fall as a result of Major McAbee's order to use the black box device on Tuesday, October 10, 2017. Major Johnson's unconstitutional order was made on Wednesday, October 4, 2017." *Id.*

Counselors Walker, Zelasko and Wegman, along with Lahr, refused to allow Plaintiff's grievances to be reviewed by an ADA Coordinator. *Id.* Lahr also refused to investigate Plaintiff's claims in the two grievances that she reviewed. *Id.* "Because of the rules and regulations as stated, Counselors Walker, Zelasko and Wegman, along with Lahr, were not permitted to review and answer [Plaintiff's] grievances." *Id.*

Wexford "knowingly employs officials who have a track record for not providing the correct type of care, or outright refusing to provide care at all, for serious medical needs." *Id.* IDOC allowed employees and contractors to ignore Plaintiff's medical needs. *Id.* As a result of his condition and the pain he experiences walking, Plaintiff has missed meals, religious services, recreational periods, job assignment opportunities, mental health services and other general activities. (Doc. 1, p. 28).

Plaintiff requests a permanent injunction[1] requiring that he be seen by an orthopedic specialist, that he receive corrective orthopedic shoes and that he be allowed to work "any job assignment that [he] otherwise qualif[ies] for." (Doc. 1, p. 30). Plaintiff also seeks declaratory and monetary relief. (Doc. 1, pp. 30-31).

## Count 3

The Eighth Amendment protects inmates from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006)

---

[1] Plaintiff's request for a preliminary injunction was denied without prejudice in the severance order. (Doc. 1).

(*per curiam*). To state such a claim, an inmate must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Seventh Circuit has held that a medical need is objectively serious if it has either "been diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). Plaintiff's deformity, arthritis and associated pain satisfy the objective component of Count 3 for screening purposes. However, the analysis does not end there.

The Complaint allegations must also suggest that Defendants exhibited deliberate indifference to Plaintiff's serious medical need. Deliberate indifference is established when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834).

### Dr. Santos

For a medical professional to be held liable for deliberate indifference, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates do not have a right to demand specific care, nor are they entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). By the same token, prison

medical staff cannot simply continue with a course of treatment known to be ineffective. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Delaying treatment may also constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Also, the "deliberate refusal to treat treatable pain can rise to the level of an Eighth Amendment violation." *Brown v. Darnold*, 505 F. App'x. 584 (7th Cir. 2013) (citing *Gil v. Reed*, 381 F.3d 649, 661-62 (7th Cir. 2004)).

The Court finds the deliberate indifference standard satisfied as to Dr. Santos. According to the Complaint, Santos refused Plaintiff pain medication on two occasions, denied a mobility aid to prevent falls, denied orthopedic shoes (despite recommendations from other physicians), prescribed insoles he knew to be ineffective and refused to refer Plaintiff for rehabilitative services. These allegations are sufficient at the pleading stage to allow Count 3 to proceed as to Dr. Santos.

### Sgt. Downes and Majors Johnson and McAbee

Plaintiff alleges that Sgt. Downes forced him to stand against medical orders, causing him to fall or almost fall on multiple occasions. He claims Majors Johnson and McAbee ignored his medical needs by forcing him to wear a black box, which prevented him from using his cane. These allegations are sufficient to allow Count 3 to proceed as to these defendants. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (deliberate indifference is manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed").

*Other Non-Medical Officials*

Plaintiff alleges that Krebs refused to intervene and allow him to be seen by an orthopedic specialist and refused to investigate his claims pertaining to ineffective treatment. Plaintiff also claims that Wardens Mueller, Kink, and Stock refused to investigate his claims and/or failed to intervene to stop the alleged constitutional abuses. Although these individuals are not medical providers, their alleged failure to take action on Plaintiff's behalf, after Plaintiff allegedly brought complaints to their attention, sufficiently suggests deliberate indifference at this early stage. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (prisoner could proceed with deliberate indifference claim against non-medical prison officials who failed to intervene despite their knowledge of his serious medical condition and inadequate medical care, as explained in his "coherent and highly detailed grievances and other correspondences"); *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (non-medical defendant may be chargeable with deliberate indifference if he or she has reason to believe that prison medical staff members are ignoring a prisoner's medical needs and fails to act).

The Complaint also alleges that Walker, Zelasko, Wegman and Lahr actively interfered with his attempts to obtain medical care through the grievance process and/or refused to investigate Plaintiff's grievances pertaining to inadequate medical care. These allegations also warrant further review.

Generally, the denial of a grievance – standing alone – is not enough to violate the United States Constitution. *See*, e.g., *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance."). Nevertheless, as the Seventh Circuit explained in *Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015), an official may be subject to liability if he or

she "knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Perez*, 792 F.3d at 781 (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996).

In *Perez,* the plaintiff sued prison doctors as well as grievance officials for allegedly inadequate medical care. The Complaint, which was dismissed at screening, alleged that prison officials (1) obtained actual knowledge of the plaintiff's "objectively serious medical condition and inadequate medical care through [the plaintiff's] coherent and highly detailed grievances and other correspondences" and (2) failed "to exercise [their] authority to intervene on [the plaintiff's] behalf to rectify the situation, suggesting they either approved of or turned a blind eye to [the plaintiff's] allegedly unconstitutional treatment." *Id.* at 782. The Appellate Court concluded that such allegations warranted further review and should not have been dismissed at screening. *Id.* In so holding, the Seventh Circuit explained that discovery might shed light on whether the grievance officials took investigative action or "reasonably relied on the judgment of medical professionals." *Id.* (citing *Vance v. Peters*, 97 F.3d. 987, 993 (7th Cir. 1996); *Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006)). The same rationale applies in this case. Plaintiff's allegations present "questions of fact that simply cannot be resolved in the absence of a record." *Id.*

For these reasons, Count 3 will proceed against Mueller, Kink, Stock, Krebs, Downes, Johnson, McAbee, Walker, Zelasko, Wegman and Lahr.

### IDOC

Count 3 must be dismissed as to IDOC because as a state agency, it is not a "person" that may be sued under § 1983. *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989)); *see also* 42 U.S.C. § 1983 ("Every

person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....").  Accordingly, IDOC will be dismissed from Count 3 with prejudice.

### *Wexford*

Wexford is a corporation that employs health care providers at IDOC facilities, including Centralia, and provides medical care to inmates, but it cannot be held liable solely on that basis. Rather, a corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right.  *Woodward v. Corr. Med. Serv. of Ill., Inc*., 368 F.3d 917, 927 (7th Cir. 2004).  *See also Jackson v. Ill. Medi-Car, Inc*., 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).

Here, Plaintiff alleges that Wexford knowingly employs individuals who have a history of providing inadequate treatment and/or denying treatment.  In essence, Plaintiff is alleging that Wexford engaged in poor or negligent hiring practices.  This is not sufficient to impose liability on them.  This is because Wexford's allegedly negligent hiring decisions do not constitute a policy or practice that caused the medical provider defendants to violate Plaintiff's rights.  Thus, Wexford will be dismissed from Count 3 without prejudice.

### Count 4

Plaintiff also brings state law claims of medical malpractice against Santos, Mueller, Kink, Stock, Krebs, Downes, Johnson, McAbee, Walker, Zelasko, Wegman, Lahr, Wexford, and

IDOC, based on the same conduct detailed above.[2]  As an initial matter, Mueller, Kink, Stock, Krebs, Downes, Johnson, McAbee, Walker, Zelasko, Wegman and Lahr shall be dismissed from Count 4 without prejudice.  There is no indication that these individuals are "health professionals" and therefore, they cannot be properly sued for medical malpractice.[3]  IDOC will be dismissed from Count 4 without prejudice for the same reason.

The remaining defendants, Santos and Wexford, may be appropriate defendants with respect to Plaintiff's medical malpractice claim.  That said, Count 4 must also be dismissed as to these defendants because Plaintiff has failed to comply with a substantive and procedural requirement applicable to medical malpractice actions in Illinois.

Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the

---

[2] Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims.  *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).  "A loose factual connection is generally sufficient."  *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).  Applying this standard, the Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.
[3] The Illinois Supreme Court has described medical malpractice, or "healing art" malpractice, as "a broad category that is not confined to actions against physicians and hospitals but rather, [ ] may also include actions against other health professionals such as dentists or psychologists."  *Bernier v. Burris*, 497 N.E.2d 763, 767 (Ill. 1986).  Even that broad description does not include correctional officers, grievance officials or prison supervisory officials with no professional medical training.

complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a). A separate affidavit and report shall be filed as to each defendant. *See* 735 ILL. COMP. STAT. §5/2-622(b).

Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, Case No. 06-cv-651-MJR, 2007 WL 1655799, at *4-5 (S.D. Ill. June 5, 2007).

In the instant case, Plaintiff has failed to file the necessary affidavits or reports. Therefore, the claim in Count 4 shall be dismissed as to the remaining defendants. However, the dismissal shall be without prejudice at this time, and Plaintiff shall be allowed 90 days to file the required affidavit(s), if he desires to seek reinstatement of this claim. The certificate(s) of merit must also be filed, in accordance with the applicable section of §5/2-622(a). Should Plaintiff fail to timely file the required affidavits/certificates, the dismissal of Count 4 may become a dismissal with prejudice.

### Count 5

Title II of the ADA prohibits public entities from denying qualified individuals with disabilities the opportunity to participate in the services, programs, or activities of the public entity because of their disabilities. 42 U.S.C. § 12132. The Supreme Court has held that Title II

of the ADA applies to prisons.  *See Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206 (1998).

Furthermore, in *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court recognized

that an inmate may bring a private cause of action for damages under Title II, if the state actor's

conduct also violates the Eighth Amendment.

Based on his physical condition, Plaintiff is arguably a qualified disabled person for ADA

purposes.  42 U.S.C. § 12102(1).  Thus, if his allegations state a plausible claim that Defendants

may have been deliberately indifferent to his disability-related needs, he may proceed on his

claim under the ADA.  Plaintiff also claims that as a result of his condition and the pain he

experiences walking, he has missed meals, religious services, recreational periods, job

assignment opportunities, mental health services and other activities.  This allegation also

indicates a possible ADA violation.

Claims under Title II of the ADA must be brought against a governmental (i.e., public)

entity rather than against an individual, 42 U.S.C. § 12132.  Therefore, the Court will also allow

Plaintiff's ADA Title II claim based on the deliberately indifferent failure to provide him

accommodations for his medical condition to proceed against IDOC.

Turning to the Rehabilitation Act, the Seventh Circuit instructs that claims of

discrimination on account of a disability, especially those from *pro se* prisoner litigants, must be

analyzed in light of both the ADA and the Rehabilitation Act, whether or not the plaintiff has

asserted a claim under the latter statute.  *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012);

*Jaros v. Illinois Dept. of Corr.*, 684 F.3d 667 (7th Cir. 2012).  A state prisoner may have a cause

of action under the Rehabilitation Act even if the ADA does not give rise to a claim.  *Id*.  To

state a claim under the Rehabilitation Act, a plaintiff must "allege that (1) he is a qualified person

(2) with a disability and (3) the Department of Corrections denied him access to a program or

activity because of his disability." *Jaros*, 684 F.3d at 672; see 29 U.S.C. § 705(2)(B). A refusal to make accommodations for an inmate's disability "is tantamount to denying access." *Id.*

Plaintiff's factual allegations support a Rehabilitation Act claim that he was denied access to various programs or activities at the prison. For these reasons, Plaintiff may proceed against IDOC on Count 5 under both the ADA and Rehabilitation Act.

## Pending Motions

Plaintiff's motions for recruitment of counsel (Doc. 4) shall be referred to United States Magistrate Judge Reona J. Daly for further consideration.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 3** will proceed as to **SANTOS, MUELLER, KINK, STOCK, KREBS, DOWNES, JOHNSON, MCABEE, WALKER, ZELASKO, WEGMAN** and **LAHR**. **COUNT 3** will be **DISMISSED** without prejudice as to **WEXFORD** and with prejudice as to **IDOC**.

**IT IS FURTHER ORDERED** that **COUNT 4** is **DISMISSED** without prejudice for the reasons stated herein.

**IT IS FURTHER ORDERED** that **COUNT 5** will proceed as to **IDOC**.

The Clerk of the Court is **DIRECTED** to terminate **WEXFORD** as a defendant in CM/ECF.

**IT IS FURTHER ORDERED** that if Plaintiff wishes to move the Court to reinstate the medical malpractice/negligence claim(s) in **COUNT 4** against **SANTOS** and/or **WEXFORD**, Plaintiff shall file the required affidavit(s) pursuant to 735 Ill. Comp. Stat. §5/2-622, within 90 days of the date of this order (on or before July 12, 2018). Further, Plaintiff shall timely file the required written report(s)/certificate(s) of merit from a qualified health professional, in

compliance with §5/2-622. Should Plaintiff fail to timely file the required affidavits or reports, the dismissal of **COUNT 4** may become a dismissal with prejudice.

**IT IS FURTHER ORDERED** that as to **COUNTS 3** and **5**, the Clerk of Court shall prepare for **SANTOS, MUELLER, KINK, STOCK, KREBS, DOWNES, JOHNSON, MCABEE, WALKER, ZELASKO, WEGMAN, LAHR** and **IDOC**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If one of the defendants fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings, including Plaintiff's Motion for Recruitment of Counsel. Further, this entire matter shall be **REFERRED** to United States

Magistrate Judge Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 12, 2018**

s/ STACI M. YANDLE
**U.S. District Judge**