IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JEFFREY H. EASTMAN,                    )
                                       )
      Plaintiff,                    )
                                       )
      v.                            )          Case No.   18-cv-602-RJD
                                       )
VENERIO SANTOS, et al.,                )
                                       )
      Defendants.                   )

## ORDER

**DALY, Magistrate Judge:**

Plaintiff Jeffrey Eastman, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Centralia Correctional Center ("Centralia"). Plaintiff alleges he suffers from a congenital deformity that causes his bones and ankles to become misaligned and collapse when bearing weight.   This condition causes Plaintiff pain and difficulty walking.   Plaintiff's First Amended Complaint sets forth the following claims (*see* Docs. 141 and 142):

Count One:   Santos, Mueller, Kink, Stock, Krebs, Downs, Johnson, McAbee, Walker, Zelasko, Wegman, Lahr, and Dr. Ritz showed deliberate indifference to Plaintiff's serious medical need involving a deformity and arthritis in his feet and pain associated therewith in violation of the Eighth Amendment.

Count Two:   IDOC violated the Americans with Disabilities Act and the Rehabilitation Act by failing to accommodate Plaintiff's needs related to a deformity and arthritis in his feet.

This matter is now before the Court on the motions for summary judgment filed by all parties.   For the reasons set forth below, the Court rules as follows:

- Motion for Summary Judgment filed by Dr. Venerio Santos (Doc. 138) is **DENIED**

Page **1** of 25

- Cross-Motion for Summary Judgment against Defendant Santos filed by Plaintiff (Doc. 165) is **DENIED**

- Motion for Summary Judgment filed by Dr. Stephen Ritz (Doc. 179) is **DENIED**

- Motion for Summary Judgment against Defendants IDOC, Susan Walker, Deborah Zelasko, Robert Wegman, Ann Lahr, Lisa, Krebs, Stephen Johnson, Ted McAbee, Robert Mueller, Kevin Kink, David Stock, and David Downs filed by Plaintiff (Doc. 186) is **DENIED**

- Motion for Partial Summary Judgment filed by Defendants IDOC, Ann Lahr, Robert Wegman, Deborah Zelasko, Susan Walker, and Lisa Krebs[1] (Doc. 194) is **GRANTED**

- Cross-Motion for Summary Judgment against Defendant Ritz filed by Plaintiff (Doc. 251) is **DENIED**

## **Procedural Matter**

As a preliminary matter, the Court must address Plaintiff's request for leave of court to apply the mailbox rule to Doc. 251 and all related documents Plaintiff filed in response to Defendant Ritz's motion for summary judgment (Doc. 264).   In this motion, Plaintiff asks that the Court accept as timely filed his cross-motion for summary judgment as to Defendant Ritz (which the Court also construes as Plaintiff's response to Dr. Ritz's motion for summary judgment). Plaintiff's motion was filed on March 16, 2020, while his deadline was March 13, 2020.   Plaintiff explains that he placed these documents in the mail at his institution on March 10, 2020, and has provided the Court with a copy of his postage payment.   The Court finds that justice requires the Court accept Plaintiff's filing as timely.   Accordingly, Plaintiff's motion is **GRANTED**.   The Court acknowledges Defendants' objection (Doc. 258) (which was erroneously filed as a response to Plaintiff's motion rather than a motion), but declines to deny or disregard Plaintiff's motion at

---

[1] The IDOC Defendants did not move for summary judgment on behalf of Defendants Mueller, Kink, Stock, Downs, Johnson, or McAbee.   However, in their response to Plaintiff's cross-motion for summary judgment, Defendants Stock, Kink, and Mueller ask the Court to enter summary judgment in their favor, although they note they did not initially move for summary judgment.

Doc. 251 on the basis of untimeliness.   Further, the Court declines to provide an extension for Dr. Ritz to respond given the Court's decision to deny Plaintiff's cross-motion (as set forth below). The Court further notes the issues in this case have been fully briefed by all parties.

## Factual Background

### *Plaintiff's Medical Treatment*

Relevant to his Complaint, Plaintiff suffers from a congenital condition in which his ankle structure collapses upon bearing weight (Deposition of Jeffrey Eastman, Doc. 139-2 at 24).   As a child, Plaintiff wore custom orthotic-braces, and prior to entering into IDOC custody, Plaintiff wore shoe insoles to alleviate his condition (*Id.* at 28, 30).   While at Big Muddy River Correctional Center in 2014, Plaintiff was issued foam insoles, which he contends did nothing to address his congenital deformity (Plaintiff's Declaration, Doc. 164-2 at 5, ¶ 12).   Plaintiff continued to wear these insoles when he was transferred to Centralia Correctional Center ("Centralia") (*Id.* at 5, ¶ 13).

Plaintiff was incarcerated at Centralia from November 2015 to September 2017 (Doc. 139-2 at 19).   While at Centralia, Plaintiff worked in the kitchen until January 2017 (*Id.*). Plaintiff testified that while working on March 5, 2016, Plaintiff fell and injured his ankle (*Id.*at 21).   Plaintiff was seen in the healthcare unit and issued a medical lay-in for three days, until March 8, 2016 (Doc. 139-2 at 37).   This was the first time Plaintiff was seen at Centralia for his ankle issue.   According to his medical records, Plaintiff was seen after he complained that he felt a "pop" in his right foot when he stepped down on it (Declaration of Venerio Santos, M.D., Doc. 139-1 at ¶ 7.).   Plaintiff also complained of a wart on the bottom of his right foot (*Id.*).   As testified to by Plaintiff, Dr. Santos attests Plaintiff was issued a three-day medical lay in to recuperate (*Id*).

Dr. Santos first examined Plaintiff on March 8, 2016 (Doc. 139-2 at 137).   Dr. Santos prescribed an ointment for the wart on Plaintiff's right foot, and noted Plaintiff was born with flat feet (Doc. 139-1 at ¶ 8; *see* Doc. 139-1 at 11).   Plaintiff asserts he told Dr. Santos the foam insoles issued at Big Muddy did not help his condition, and he asked for a referral to an orthopedic specialist, but was told it was not necessary (Doc. 164-2 at 6, ¶ 17).   Although it is undisputed that Dr. Santos ordered arch support insoles for Plaintiff in March, the date on which the supports were ordered and issued is disputed.   Plaintiff contends the supports were ordered March 8, 2016, and issued on March 17, 2016 (*see* Doc. 139-1 at 11, 15), while Dr. Santos asserts he ordered the supports on March 24, 2016 and they were issued on April 6, 2016 (Doc. 139-1 at ¶¶ 9-10; *see* Doc. 139-1 at 16-17).   Plaintiff testified the supports ordered by Dr. Santos were the same type as the supports provided at Big Muddy, and that he still suffered arthritic-type pain when he walked (Doc. 139-2 at 37-38).

Dr. Santos saw Plaintiff again on April 11, 2016 after he experienced ankle instability at work (Doc. 139-1 at ¶ 11; Doc. 164-2 at 7, ¶ 21).   Dr. Santos noted that Plaintiff complained of right foot and ankle pain and observed that Plaintiff walked without a limp (Doc. 139-1 at ¶ 11; *see* Doc. 139-1 at 20).   Plaintiff, however, contends he was walking with a limp during this encounter (*see* Doc. 139-1 at 19).   Dr. Santos asked that the Health Information Administrator order Plaintiff's historical medical records (*Id.*).   Dr. Santos also ordered an x-ray of Plaintiff's right ankle, and prescribed Motrin, 600 milligrams, to be taken three times per day as needed (*Id.*).   Plaintiff asserts he again asked Dr. Santos for a referral to a specialist so he could be fitted for custom braces, but his request for a referral was denied (Doc. 164-2 at 7, ¶ 22).   Plaintiff also asked for a cane, but his request was denied (*Id.* at 8, ¶ 22).   Plaintiff's medical records from the Carle Foundation Hospital and Dr. Frank Stephens were requested by the Health Information

Administrator on April 12, 2016 (Doc. 139-1 at ¶ 12; *see* Doc. 139-1 at 64).   An x-ray of Plaintiff's right ankle was completed on April 16, 2016, with a reported finding of mild osteoarthritis of the right ankle joint, without any acute bony fracture or dislocation (Doc. 139-1 at ¶ 13; *see* Doc. 139-1 at 60).   Plaintiff saw Dr. Santos again on April 18, 2016, and Dr. Santos explained the findings of the radiologist who administrated the x-ray (Doc. 139-1 at ¶ 14; *see* Doc. 139-1 at 21).   Per Dr. Santos' request, the Health Information Administrator wrote to again request Plaintiff's historical medical records (Doc. 139-1 at ¶ 15).   On August 7, 2016, a nurse noted that Centralia had been informed that no medical records for Plaintiff were found (Doc. 139-1 at ¶ 16).

On September 21, 2016, Plaintiff was seen by another physician at Centralia, Dr. Garcia (who is not a defendant in this action) (Doc. 139-1 at ¶ 17; *see* Doc. 139-1 at 28).   Plaintiff was seen after putting in a request for healthcare after he experienced ankle instability on September 16, 2016 (Doc. 164-2 at 9, ¶ 30).   Dr. Garcia noted Plaintiff had flat feet and suffered sudden pain in his right foot while walking (*see* Doc. 139-1 at 28).   Dr. Garcia ordered arch supports, ACE wraps, a prescription for Motrin, and a slow walk pass for two weeks for Plaintiff (*Id.*).   During a follow-up with Dr. Garcia on October 26, 2016, he continued his treatment regimen for Plaintiff, including ACE wraps, Motrin, and renewal of the slow walk pass (Doc. 139-1 at ¶ 19; *see* Doc. 139-1 at 38).   Dr. Garcia again continued this treatment regimen during a follow-up on November 9, 2016 (Doc. 139-1 at ¶ 21; *see* Doc. 139-1 at 39).

Plaintiff saw Dr. Santos again on November 11, 2016 (Doc. 139-1 at ¶ 22; *see* Doc. 139-1 at 40).   Plaintiff indicated he previously used orthopedic shoes, and requested that he be issued the same (*Id.*).   Dr. Santos observed Plaintiff was walking without a limp (Doc. 139-1 at ¶ 22), a point that Plaintiff disputes (Doc. 164-2 at 11, ¶ 37).   Dr. Santos noted Plaintiff had been prescribed

pain medication two days previously, so only planned on repeating his request for historical medical records (Doc. 139-1 at ¶ 22; *see* Doc. 139-1 at 40).   Plaintiff asserts he advised Dr. Santos he kept falling down, and requested a cane and a referral to a specialist, but his requests were denied (Doc. 164-2 at 11, ¶ 37).

Plaintiff was next seen on March 15, 2017 by Dr. Garcia for complaints of bilateral foot pain due to his flat feet (Doc. 139-1 at ¶ 23; *see* Doc. 139-1 at 45).   Dr. Garcia assessed that Plaintiff suffered from a flat feet deformity, and noted he was awaiting records from Plaintiff's previous orthopedist, Dr. Stephens (Doc. 139-1 at ¶ 23; *see* Doc. 139-1 at 45).   Dr. Garcia prescribed Motrin, 600 milligrams, to be taken three times per day as needed (*Id.*).   According to Plaintiff, Dr. Garcia indicated he would need orthotic shoes (Doc. 164-2 at 11, ¶ 39).   Plaintiff was next seen for foot and ankle pain on July 3, 2017 by Dr. Santos (Doc. 139-1 at ¶ 24; *see* Doc. 139-1 at 51).   Dr. Santos observed Plaintiff had external rotation of his feet with tendon pain, and assessed his condition as valgus pes plano, bilaterally, meaning Plaintiff's flat feet caused a rolled-in appearance of the ankle, and a heel that appeared to be rolled-out from under the ankle (Doc. 139-1 at ¶ 24; *see* Doc. 139-1 at 51).   Dr. Santos planned to request Ankle and Foot Orthosis ("AFO") braces with boots (*Id.*).   Plaintiff attests he also requested a cane and a referral to a specialist during this examination, and asserts he complained of missing meals, falling, and suffering extreme pain (Doc. 164-2 at 12, ¶ 43).   Dr. Santos did not provide pain medication and refused to provide Plaintiff a cane (*Id.*).   Per Dr. Santos' orders, Plaintiff was issued authorization to have two AFO braces in his possession for an unlimited period of time (Doc. 139-1 at ¶ 26; *see* Doc. 139-1 at 77).   The AFO braces were issued on July 17, 2017 (Doc. 164-2 at 13, ¶ 44). According to Plaintiff, the braces had no arch support and no corrective ability; as such, they did nothing to correct or alleviate his condition (*Id.* at 13, ¶ 45).

On August 3, 2017, Dr. Santos saw Plaintiff to address his complaint that the prescribed AFO braces were ineffective (Doc. 139-1 at ¶ 27; *see* Doc. 139-1 at 56).   Plaintiff asserts the AFO braces that were prescribed by Dr. Santos were used to treat "dropfoot," a condition Plaintiff does not suffer from, causing the braces to be ineffective (Doc. 164-2 at 13, ¶ 47).   During this examination, Dr. Santos observed Plaintiff walking with the AFO braces and Dr. Santos planned to order Plaintiff replacement insoles (Doc. 139-1 at ¶ 27; *see* Doc. 139-1 at 56).   Plaintiff attests he sought a cane and referral to a specialist, as well as pain medication, but was refused (Doc. 164-2 at 13, ¶ 47).   On August 28, 2017, Plaintiff was transferred from Centralia to Jacksonville Correctional Center ("Jacksonville") (Doc. 139-1 at ¶ 28; *see* Doc. 139-1 at 57-58).   In September 2017, while at Jacksonville, Plaintiff was issued a cane (Doc. 164-2 at 14, ¶ 53).

On October 2, 2017, Plaintiff returned to Centralia temporarily and was seen by Dr. Santos (Doc. 139-1 at ¶ 28; *see* Doc. 139-1 at 31).   Dr. Santos observed Plaintiff was using a quad cane and AFO braces, and he again assessed that Plaintiff had a congenital deformity to his right foot and ankle (*Id.*).   Dr. Santos authorized Plaintiff's possession of the quad cane, a lower bunk permit, and leg braces for three months (Doc. 139-1 at ¶¶ 29-30).   Permits were issued for the same (*see* Doc. 139-1 at 81-84).   Plaintiff was transferred back to Jacksonville on December 8, 2017, and did not return to Centralia again until April 11, 2018 (Doc. 139-1 at ¶¶ 31-32)

On April 16, 2018, Dr. Garcia submitted a request through the Wexford Health Sources, Inc. ("Wexford") Collegial Review process for approval for offsite treatment for Plaintiff to receive custom designed arch supports or to be referred to a podiatrist or orthopedic professional for a consultation for treatment of Plaintiff's feet and ankles (Doc. 139-1 at ¶ 32; *see* Doc. 139-1 at 85).   Dr. Garcia noted that Plaintiff had chronic, worsening pain due to his flat feet, and walked using a cane (*Id.*).   Dr. Garcia also noted that conservative treatment had failed, including rest,

Page **7** of **25**

ice, stretching, shoe inserts with arch supports, and braces (*Id.*).   Dr. Garcia's request was not approved after consultation with Dr. Ritz, and it was determined that more information would be collected and it would be addressed again (*Id.*).

On May 7, 2018[2], while still temporarily housed at Centralia, Dr. Santos submitted a request through the Collegial Review process for appeal of the prior decision not to send Plaintiff offsite for evaluation by a specialist (Doc. 139-1 at ¶ 33; *see* Doc. 139-1 at 85).   Dr. Santos noted that Plaintiff had congenital flat feet, that he was issued different arch supports and insoles, and that he walked with a cane (Doc. 139-1 at ¶ 33; *see* Doc. 139-1 at 85-86).   Dr. Santos requested that Plaintiff receive custom designed orthosis to alleviate his symptoms (*Id.*).   After discussion with Defendant Dr. Ritz, the request was not approved (*Id.*).   It was decided that the matter would be reevaluated once Plaintiff returned to his parent institution, Taylorville Correctional Center, and he would continue to use off-the-shelf insoles while at Centralia (*Id.*).   Dr. Santos discussed the decision made through Collegial Review with Plaintiff on May 11, 2018 (Doc. 139-1 at ¶ 34; *see* Doc. 139-1 at 87).   Plaintiff next saw Dr. Santos on July 3, 2018 regarding his complaint of pain in his ankles (Doc. 139-1 at ¶ 35; *see* Doc. 139-1 at 88).   Dr. Santos observed that Plaintiff was walking with a cane, that he had no swelling, and that he had deformity of his feet (*Id.*).   Dr. Santos noted the ongoing assessment of bilateral pes plano valgus and prescribed Motrin, 600 milligrams, to be taken as needed three times per day (*Id.*).   Plaintiff asserts he also requested a referral to a specialist at this appointment, but was denied (Doc. 164-2 at 18, ¶ 73).   Plaintiff was transferred from Centralia to Taylorville on September 7, 2018 (Doc. 139-1 at ¶ 36; *see* Doc. 139-1 at 89).   Plaintiff was sent to an orthopedic specialist on November 9, 2018, who concluded he

---

[2] There is some discrepancy as to the date on which the appeal was submitted, as it is dated both April 30, 2018 and May 7, 2018; however, this discrepancy is not material to the issues in this lawsuit.

required custom ankle-foot orthosis (Doc. 164-2 at 20, ¶¶ 80-84).   Plaintiff was fitted for custom orthosis in December 2018, and they were issued in February 2019 (Doc. 164-2 at 21, ¶¶ 85, 87).

***Plaintiff's Grievances and Requests for Medical Treatment***

Unsatisfied with his medical treatment as described above, Plaintiff started writing letters to personnel at Centralia in April 2016.   More specifically, Plaintiff wrote a request to Defendant Lisa Krebs, the Healthcare Unit Administrator at Centralia, dated April 8, 2016 (Doc. 139-2 at 47-48; Plaintiff's Declaration, Doc. 186-2 at 2, ¶ 6).   Plaintiff explained his medical condition, the ineffectiveness of the treatment being rendered, and asked for a referral to a specialist (*Id.*). Krebs responded on the same date, stating that "an outside referral must be ordered by our Medical Director – Pls submit a request to be evaluated by the MD" (*Id.* at 2, ¶ 7).   After suffering a fall on April 11, 2016, Plaintiff wrote the Medical Director (who he did not realize was Dr. Santos) on April 12, 2016 (*Id.* at 2, ¶¶ 8-9).   In this letter, Plaintiff reiterated much of the same information included in his request to Krebs (*Id.* at 2-3, ¶ 9).   Krebs, not the Medical Director, responded to this letter, indicating they had submitted a request for Plaintiff's historic medical records (*Id.*). Around late April 2016, Plaintiff wrote a request slip addressed to Warden Robert Mueller advising him that the doctor refused to issue him a cane or orthotic braces (*Id.* at 3, ¶ 10).   Plaintiff did not receive a response to this request from the Warden; however, Defendant Krebs responded on May 4, 2016, indicating the Warden had turned the grievance to her for review (*Id.* at 3, ¶ 11). Krebs indicated Plaintiff had been provided arch supports and Motrin for discomfort, and explained the doctor did not think Plaintiff needed orthopedic shoes (*Id.*).   Krebs reiterated that Centralia had sent for Plaintiff's historical medical records (*Id.*).

Plaintiff filed his first grievance related to his ankle and foot condition at Centralia on August 5, 2016 (Doc. 186-2 at 3, ¶ 12; *see* Doc. 195-2 at 2-3).   In this grievance, Plaintiff sought

a referral to an orthopedic specialist and requested orthopedic shoes (*see id.* at 2-3).   Plaintiff's counselor, Defendant Susan Walker, responded to this grievance on August 18, 2016, explaining that per the Healthcare Unit Administrator, the doctor had suggested arch supports, but orthopedic shoes were not indicated (*see id.* at 2).   Plaintiff submitted this grievance to the Grievance Office for further review (Doc. 186-2 at 4, ¶ 15).   The Grievance Officer, Defendant Deborah Zelasko, received this grievance on August 30, 2016, and responded on September 1, 2016 (*see* Doc. 195-2 at 1).   Zelasko recommended that the grievance be denied, finding that Plaintiff's medical concerns were being addressed by the facility's medical staff (*see id.*).   Defendant Warden Mueller concurred with Zelasko's recommendation and denied the grievance on September 16, 2016 (*see id.*).   Plaintiff asserts no one spoke to him regarding this grievance or did any investigation regarding his claims (Doc. 186-2 at 4, ¶ 16).   Plaintiff asserts an officer on the ADA compliance team should have reviewed this grievance (*Id.*).   Plaintiff submitted this grievance to the Administrative Review Board ("ARB"), and complains that no one ever contacted a facility ADA officer or himself to discuss his complaints or disability (*Id.* at 5, ¶ 17).   Plaintiff received notice that his grievance was denied sometime in March 2017 (Doc. 186-2 at 6, ¶ 21).

Plaintiff submitted another grievance concerning his medical condition on August 17, 2017 (*see* Doc. 195-2 at 5-6).   In this grievance, Plaintiff complains that Sgt. Downs refuses to honor Plaintiff's medical exemptions and make him stand in place for prolonged periods of time, causing him pain (*see id.*).   A counselor, Defendant Robert Wegman, responded to this grievance on August 28, 2017, explaining that per Sgt. Downs, at no time can an inmate walk through or disrupt mass line movement due to safety and security concerns (*see id.* at 5).   This grievance was received by the ARB on September 12, 2017, and reviewed by Defendant Ann

Lahr (*see id.* at 4).   Lahr returned the grievance without a decision on the merits, indicating that Plaintiff failed to provide any dates for the grieved issues (*see id.*).   Plaintiff was not contacted regarding his complaints and an ADA officer failed to investigate (Doc. 186-2 at 9, ¶ 33).

### *Alleged Violation of Medical Passes and Refusal to Accommodate during Court Writs*

On July 18, 2017, while leaving dietary after lunch, Plaintiff did not line up with other inmates in light of his "no prolonged standing" order, and proceeded to walk through the "core area" to return to his housing unit (Doc. 186-2 at 6, ¶ 23).   Defendant Downs yelled at Plaintiff to get back in line (*Id.* at 7, ¶ 25).   Plaintiff attempted to show Downs his "no prolonged standing pass" and "slow walker's pass," but Downs refused to look at the passes and continued to yell at Plaintiff to stand in line (*Id.*).   Plaintiff complied with Downs' order and suffered an ankle failure and stumbled (*Id.*).   When Plaintiff yelled to Downs that he could not stand any longer, Downs told Plaintiff to "shut the fuck up" (*Id.* at 7, ¶ 26).   Downs called for a lieutenant and, when the lieutenant came, Plaintiff explained his medical condition and advised that he could not stand (*Id.* at 8, ¶ 27).   The lieutenant told Plaintiff to go back to his housing unit, and Plaintiff complied (*Id.* at 8, ¶ 27).   When Plaintiff subsequently saw Downs working in the "core area" he would attempt to utilize his medical passes, and Downs would stop Plaintiff and order him to stand in line (*Id.* at 8, ¶ 28).   Plaintiff attests Downs forced him to stand in line on July 18, July 20, July 25, July 28, July 29, July 31, August 6, August 13, August 14, August 19, and August 26, 2017.   Downs disputes Plaintiff's characterization of events, asserting Plaintiff was not made to stand, but rather, was told to remain seated during the encounters described by Plaintiff (Doc. 186-4 at 83).

While preparing to go on a court writ on October 4, 2017, Plaintiff was placed in a "black box" restraint device (Doc. 186-2 at 10, ¶ 38).   The black box restraint inhibits Plaintiff's ability

to hold his cane properly (*Id.* at 11, ¶¶ 40-41).   Plaintiff notified Defendant Major Johnson that he could not use his cane properly because of the black box restraint (*Id.* at 11, ¶ 42).   Defendant Johnson advised Plaintiff the black box restraint would be used because Plaintiff was classified as a moderate escape risk (*Id.* at 11, ¶¶ 38, 42).   Plaintiff asked if he could have a wheelchair if the black box restraint was used, but his request was denied (*Id.* at ¶ 42).   Plaintiff had difficulty ambulating and using his cane, but Defendant Johnson failed to intervene or provide a wheelchair (*Id.* at 11, ¶ 43).   Defendant Johnson attests that Plaintiff would have been offered a wheelchair by the Shift Supervisor if he expressed concerns about the use of black box restraints (Declaration of Stephen Johnson, Doc. 229-2 at ¶ 16).

Subsequently, Plaintiff wrote a request slip to Defendant Warden Mueller asking to be transported with waist chains (as opposed to a black box restraint), or receive a wheelchair (Doc. 186-2 at 12, ¶ 44).   Plaintiff never received a response to his request (*Id.*).   Plaintiff later saw Defendant Mueller and spoke to him about his request, but to no avail (*Id.*).   Plaintiff also saw Defendant Kink on October 5 or 6, 2017, and asked if he could be transported with waist chains or a wheelchair (Doc. 186-2 at 12, ¶ 45).   Kink's phone rang during the conversation and he walked off with no follow-up (Doc. 139-2 at 63; Doc. 186-2 at 12, ¶ 45).   Plaintiff also spoke to Defendant Warden Stock on October 6, 2017 regarding his placement in the black box restraints (Doc. 139-2 at 62; Doc. 186-2 at 12, ¶ 46).   Plaintiff told Stock about his medical condition and asked Stock why he could not have waist chains or a wheelchair for his court writs (Doc. 139-2 at 62).   Stock was upset because Plaintiff was not looking him in the eyes and their conversation ended (Doc. 186-2 at 12, ¶ 46).

A similar incident occurred on October 10, 2017 during another court writ (*Id.* at 12, ¶ 47).   Plaintiff was again placed in black box restraints, and he asked the shift commander,

Defendant Major McAbee, if he could have waist chains or a wheelchair (Doc. 139-2 at 55).

McAbee told Plaintiff he would have to be in a black box because he was a moderate escape risk

(*Id.*).   Plaintiff asked for a wheelchair or different hand-positioning so he could hold his cane,

but Plaintiff asserts his requests were denied (Doc. 186-2 at 12, ¶ 47).   After his court hearing,

Plaintiff became unstable and was caught by an officer while falling (*Id.* at 13, ¶ 50).   Defendant

McAbee asserts Plaintiff was offered the use of a wheelchair during this writ, but Plaintiff refused

(Doc. 122 at 2).

## <u>Summary Judgment Standard</u>

Summary judgment is appropriate only if the moving party can demonstrate "that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also*

*Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of

material fact.   *Celotex*, 477 U.S. at 323.   Once a properly supported motion for summary

judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue

for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   A genuine issue of

material fact exists when "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting

*Anderson*, 477 U.S. at 248).   In assessing a summary judgment motion, the district court views the

facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving

party.   *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation

omitted).

**<u>Discussion</u>**

***Count One: Eighth Amendment claim against Defendants Santos, Mueller, Kink, Stock, Krebs, Downs, Johnson, McAbee, Walker, Zelasko, Wegman, Lahr, and Dr. Ritz***

In Count One, Plaintiff alleges Defendants showed deliberate indifference to his serious medical need involving a deformity and arthritis in his feet, and pain associated therewith.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners

can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987).   Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653.   A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs."   *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

Defendants have not set forth the argument that Plaintiff's congenital foot and ankle condition does not constitute a serious medical need; as such, the Court finds such point conceded for purposes of summary judgment.   The question, therefore, is whether any defendant named in Count One acted with deliberate indifference to Plaintiff's condition and his related complaints of pain.

### Dr. Venerio Santos

Based on a review of the evidence in the record, Plaintiff saw Dr. Santos on six occasions over the course of approximately eighteen months (March 2016 to August 2017) while Plaintiff was at Centralia to address his foot and ankle complaints.   Plaintiff also saw another physician, Dr. Garcia, for his complaints, during this time.   Dr. Santos and Dr. Garcia provided various treatments to attempt to address Plaintiff's complaints, including the provision of pain medication, the issuance of various medical permits and arch supports, gel insoles, and ace wraps.   While at another institution, Plaintiff was later issued a cane and approved for a referral to an orthopedic

specialist, who issued custom fitted orthotic devices.

Dr. Santos asserts he provided adequate treatment for Plaintiff's condition, which included frequent physician appointments, and the use of increasingly complex equipment over time.   Dr. Santos asserts Plaintiff cannot produce evidence that his treatment decisions were inappropriate or unreasonable in any manner.

While the Court recognizes that "neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference … to prevail on an Eighth Amendment claim 'a prisoner is not required to show that he was literally ignored'."   *Greeno v. Daley*, 414 F.3d 645 (7th Cir. 2005) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000) (other citations omitted).   Indeed, "a doctor's choice of the 'easier and less efficacious treatment' for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment."   *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010) (quoting *Estelle v. Gamble*, 429 U.S. 87, 104, n.10 (1976) (other citations omitted).

Here, Dr. Santos evaluated Plaintiffs' complaints of foot and ankle pain and instability numerous times over the course of approximately eighteen months.   Despite the persistence of his complaints, and the failure of various medications and devices to address Plaintiff's pain and associated symptoms, Dr. Santos failed to issue a cane or consider referring Plaintiff to an orthopedic specialist to be fit for custom braces.   As espoused by the Seventh Circuit in *Greeno v. Anderson*, persistence in a course of treatment known to be ineffective may violate the Eighth Amendment.   414 F.3d 645, 655 (7th Cir. 2005) (finding that a genuine issue of material fact existed as to whether physician was deliberately indifferent to prisoner's deteriorating medical condition by continuing to persist with course of treatment that had been ineffective); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (stating that "medical personnel cannot

simply resort to an easier course of treatment that they know is ineffective"). Plaintiff has presented some evidence that his condition and ongoing complaints required additional treatment, including the issuance of a cane and custom-fit braces. Also, while the Court recognizes that Dr. Santos ultimately submitted a request for a referral to a specialist around May 2018 (via an appeal of Dr. Santos' initial request), his efforts were clearly not sufficient to address Plaintiff's ongoing complaints. Based on Plaintiff's medical history and continued complaints of instability and pain, a jury could find that Dr. Santos doggedly persisted in a course of treatment that was ineffective, resulting in significant pain. Accordingly, there is a genuine issue of material fact in this case, which precludes summary judgment on the merits as to Dr. Santos. Further, the issues of material fact as to whether Dr. Santos' treatment of Plaintiff's condition was within the boundaries of appropriate medical judgment preclude summary judgment in Plaintiff's favor on this claim. This case will proceed on a claim of deliberate indifference against Dr. Santos.

### Dr. Stephen Ritz

Dr. Ritz asserts that he was not deliberately indifferent in failing to approve Plaintiff for custom-designed arch supports or evaluation with an orthopedic specialist in April or May 2018 because the information presented indicated that Plaintiff was not in immediate and acute need of offsite care. Dr. Ritz further asserts (without citation to evidence in the record), that if Plaintiff was sent to an off-site orthopedist while staying temporarily at Centralia, the referral process and examinations could be interrupted by a transfer back to his parent institution. For these reasons, Dr. Ritz asserts that a referral to a specialist was not necessary because Plaintiff's complaints could be effectively managed onsite while Plaintiff was at Centralia, and the issue could be reconsidered once Plaintiff was transferred back to his parent institution. The Court disagrees. When crediting the evidence in the light most favorable to Plaintiff, as the Court must do here, there is

clearly a question of fact as to whether Plaintiff's condition was effectively and adequately managed while at Centralia.   Plaintiff complained of persistent ankle and foot pain and related issues for over two years — information that Dr. Ritz was, or should have been, aware.   Despite the ongoing nature of his complaints, and failure of treatment regimens to abate the same, Dr. Ritz persisted in engaging only in conservative, onsite treatment that a jury could conclude was ineffective.   Accordingly, there is a genuine issue of material fact as to whether Plaintiff's condition was adequately treated, precluding summary judgment as to Dr. Ritz.   Again, because there are issues of material fact as to whether Dr. Ritz's treatment of Plaintiff's condition was within the boundaries of appropriate medical judgment, summary judgment in favor of Plaintiff is precluded.   This case will proceed on a claim of deliberate indifference against Dr. Ritz.

### Ann Lahr, Robert Wegman, Deborah Zelasko, Susan Walker

Plaintiff contends Defendants Lahr, Wegman, Zelasko, and Walker acted with deliberate indifference to his medical condition for failing to follow IDOC's grievance procedure and failing to properly investigate his claims concerning his medical treatment.

The evidence in the record demonstrates that Defendants Lahr, Wegman, Zelasko, and Walker each received and responded to at least one of Plaintiff's grievances dated August 5, 2016 or August 17, 2017.   The Court agrees with Plaintiff that there is no indication that these defendants referred the matter to an ADA Coordinator at Plaintiff's institution.   The Court also recognizes that pursuant to 20 ILCS § 504.830(b), grievances alleging discrimination based on disability or a request for an accommodation based upon a disability shall be forwarded to the facility ADA Coordinator.   However, the issues set forth in the grievances did not clearly pertain to a request for an accommodation based upon a disability.   Rather, they addressed Plaintiff's complaints regarding inadequate medical treatment and Downs' refusal to honor a medical permit.

Page **18** of **25**

In any event, even if these grievances requested an accommodation, Defendants' failure to follow the IDOC regulations does not amount to a per se violation of the Eighth Amendment.  *See Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001) ("A violation of a state statute is not a *per se* violation of the federal Constitution.   The federal government is not the enforcer of state law.") (citations omitted).

The Court next considers Plaintiff's assertion that Defendants' failure to properly investigate his claims and intervene to address his medical needs amounted to deliberate indifference.   Notably, nonmedical personnel are entitled to defer to the judgment of health professionals, but only so long as they do not ignore the prisoner.   *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012).   In this instance, Defendants Walker and Zelasko were informed that Plaintiff was under the care of medical professionals and advised that Plaintiff was receiving treatment.   Both Walker and Zelasko acted appropriately in relying on the medical staff at Centralia and did not ignore Plaintiff's complaints.   Accordingly, Walker and Zelasko are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

With regard to Defendants Lahr and Wegman, they responded to Plaintiff's grievance complaining that Defendant Downs failed to honor certain medical passes.   Plaintiff's grievance did not clearly seek medical treatment or complain about the same.   As such, Defendants Lahr and Wegman did not act with deliberate indifference to Plaintiff's medical condition in their handling of Plaintiff's grievance and they are entitled to summary judgment.

### Lisa Krebs

The evidence in the record establishes that Defendant Lisa Krebs, the Healthcare Unit Administrator at Centralia, responded to three different letters and requests concerning the medical treatment for Plaintiff's foot and ankle condition.   More specifically, Krebs responded to a letter

dated April 8, 2016, in which Plaintiff sought a referral to a specialist, explaining that outside referrals must be ordered by the Medical Director.   Krebs also responded to an April 12, 2016 letter directed to the Medical Director explaining they had submitted a request for Plaintiff's historic medical records.   Finally, Krebs responded to a request submitted to the Warden in May 2016, explaining the doctor did not think Plaintiff needed orthopedic shoes and noting he had been provided arch supports and Motrin.

Although Krebs held the position of Healthcare Unit Administrator during the relevant time, she did not examine or render treatment for Plaintiff.   Krebs, therefore, was entitled to defer to the judgment of Plaintiff's treating physicians so long as she did not ignore his complaints. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012).   There is no evidence Krebs ignored Plaintiff's concerns; rather, the record demonstrates Krebs responded to Plaintiff's letters and requests and conducted some investigation into the treatment that was being rendered.   Krebs, therefore, was not deliberately indifferent to Plaintiff's condition and is entitled to summary judgment.

### Robert Mueller, Kevin Kink, David Stock, David Downs, Stephen Johnson, Ted McAbee

Defendants Mueller, Kink, Stock, Downs, Johnson, and McAbee have not sought summary judgment on Plaintiff's Eighth Amendment claim[3].   Plaintiff, however, seeks summary judgment in his favor against these Defendants.

In viewing the evidence in the record in the light most favorable to Defendants, the Court finds there are questions of fact that preclude summary judgment in favor of Plaintiff.   With

---

[3] As mentioned above, in their response to Plaintiff's cross-motion for summary judgment, Defendants Stock, Kink, and Mueller ask the Court to enter summary judgment in their favor, although they note they did not initially move for summary judgment.

regard to Defendants Johnson and McAbee, Plaintiff contends they refused his requests for a wheelchair despite placing him in black box restraints that hindered his mobility. Defendant Johnson asserts that Plaintiff would have been offered a wheelchair by the Shift Supervisor if he expressed concerns about the use of black box restraints, and Defendant McAbee asserts Plaintiff was offered the use of a wheelchair during his October 10, 2017 writ, but Plaintiff refused the same. Further, whether the refusal to issue a wheelchair rises to an Eighth Amendment violation in this instance is a question that must be resolved by the jury as it is not apparent that the alleged actions demonstrated a conscious disregard of a substantial risk to Plaintiff's health. Accordingly, this matter will proceed against Defendants Johnson and McAbee.

With regard to Defendant Downs, Plaintiff has presented evidence that Downs forced Plaintiff to stand on 11 occasions in July and August 2017, in contravention of his "no prolonged standing" pass, causing him to suffer ankle instability. Downs disputes Plaintiff's characterization of events, asserting Plaintiff was not made to stand, but rather, was told to remain seated during the encounters described by Plaintiff. This dispute creates a genuine issue of material fact regarding whether Defendant Downs acted with deliberate indifference to Plaintiff's medical condition. Accordingly, the Court cannot grant summary judgment in favor of Plaintiff and this matter will proceed against Defendant Downs.

With regard to Defendants Mueller, Kink, and Stock, the evidence demonstrates Plaintiff advised these Defendants he was being restrained with a black box device while on court writs, and that these devices caused issues with his ambulation. Plaintiff contends Defendants could have, and should have, intervened on his behalf to ensure he was not transported with the use of a black box device. Defendants contend these conversations are not sufficient to establish their personal liability or demonstrate that they acted with deliberate indifference. The Court agrees.

Plaintiff's interactions with Mueller, Kink, and Stock were isolated and brief, and occurred only once or twice.   While officials may not turn a blind eye to a constitutional violation, such limited, informal, and fleeting interactions do not substantiate a finding that these Defendants acted with deliberate disregard to a substantial risk of serious harm to Plaintiff.   *See Owens v. Duncan*, 788 F. App'x 371, 374 (7th Cir. 2019) (finding allegations that staff members who had a single interaction with the plaintiff did not amount to a plausible claim that the defendants knew of and disregarded a serious medical risk).

For these reasons, pursuant to Federal Rule of Civil Procedure 56(f), Plaintiff is notified that summary judgment will be granted in favor of Defendants Mueller, Stock, and Kink.   Any evidence opposing summary judgment under Rule 56(f) for the reasons provided **must** be filed by **June 15, 2020**.

### *Count Two: Rehabilitation Act and American with Disabilities Act claim against Defendant Illinois Department of Corrections*

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."   42 U.S.C. § 12132.   Similarly, Section 504 of the Rehabilitation Act prohibits any agency that receives federal funds from excluding, subjecting to discrimination, or denying the benefits of any of their programs to otherwise qualified individuals with disabilities.   29 U.S.C. § 794(a). Failure to make reasonable accommodations to ensure participation in the public entity's programs or services by a person with a disability qualifies as "discrimination." 42 U.S.C. § 12112(b)(5)(A); *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006).

In the prison context, a plaintiff can make out a prima facie case of discrimination under

both the ADA and the Rehabilitation Act by showing: (1) he is a qualified person; (2) with a disability; (3) the Department of Corrections denied him access to a program or activity because of his disability or otherwise subjected him to discrimination; and (4) the denial or discrimination was by reason of his disability. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012), citing 29 U.S.C. § 705(2)(B); *Wis. Cmty. Serv. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006); *Foley v. City of Lafayette*, 359 F.3d at 928 (7th Cir.2004); *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 119 (7th Cir. 1997).   Refusing to make reasonable accommodations is tantamount to denying access; although the Rehabilitation Act does not expressly require accommodation, "the Supreme Court has located a duty to accommodate in the statute generally." *Id*.   In the prison setting, accommodations should be judged in light of overall institutional requirements which include safety, security, and feasibility.   *Love v. Westville Correctional Center,* 103 F.3d 558, 561 (7th Cir. 1996).

Plaintiff asserts Defendant IDOC failed to accommodate his needs related to a deformity and arthritis in his feet.   Plaintiff contends his disability prevented him from attending yard, religious services, and meals, and also inhibited his ability to obtain a higher paying job.   Also, Plaintiff asserts there was no policy implemented to protect inmates such as himself who are required to wear a black box restraint while walking with a cane.

IDOC contends Plaintiff's claims must fail because there is no evidence it was informed of Plaintiff's inability to access programs or services.   Plaintiff asserts the IDOC was aware of his issues through the grievance process.   Although the IDOC may have gained constructive knowledge of Plaintiff's medical issues through the grievance process, there is nothing before the Court to demonstrate officials were aware Plaintiff was not attending yard, meals, or religious services, or other programs or services due to his disability.   Moreover, it is not apparent from the

record that the IDOC denied services because of Plaintiff's disability.   Indeed, it appears Plaintiff chose to limit his participation in certain activities without informing IDOC officials.   For these reasons, Defendant IDOC is entitled to summary judgment on Count Two.

<u>**Conclusion**</u>

Based on the foregoing, the Motion for Summary Judgment filed by Dr. Venerio Santos (Doc. 138) is **DENIED**; Cross-Motion for Summary Judgment against Defendant Santos filed by Plaintiff (Doc. 165) is **DENIED**; Motion for Summary Judgment filed by Dr. Stephen Ritz (Doc. 179) is **DENIED**; Motion for Summary Judgment against Defendants IDOC, Susan Walker, Deborah Zelasko, Robert Wegman, Ann Lahr, Lisa, Krebs, Stephen Johnson, Ted McAbee, Robert Mueller, Kevin Kink, David Stock, and David Downs filed by Plaintiff (Doc. 186) is **DENIED**; Motion for Partial Summary Judgment filed by Defendants IDOC, Ann Lahr, Robert Wegman, Deborah Zelasko, Susan Walker, and Lisa Krebs (Doc. 194) is **GRANTED**; and Cross-Motion for Summary Judgment against Defendant Ritz filed by Plaintiff (Doc. 251) is **DENIED.**

The Clerk of Court is directed to enter judgment in favor of Defendants Lisa Krebs, Ann Lahr, Robert Wegman, Deborah Zelasko, Susan Walker, and the Illinois Department of Corrections, and against Plaintiff Jeffrey Eastman at the close of this case.

Pursuant to Federal Rule of Civil Procedure 56(f), Plaintiff is notified that summary judgment will be granted in favor of Defendants Robert Mueller, David Stock, and Kevin Kink. Any evidence opposing summary judgment under Rule 56(f) for the reasons provided **must** be filed by **June 15, 2020**.

This matter will proceed on the following claim:

Count One:    Santos, Downs, Johnson, McAbee, and Dr. Ritz showed deliberate

indifference to Plaintiff's serious medical need involving a deformity and arthritis in his feet and pain associated therewith in violation of the Eighth Amendment.

**IT IS SO ORDERED.**

**DATED: May 14, 2020**

*s/  Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**