IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEFFREY H. EASTMAN, | ) |
|    Plaintiff, | ) ) ) |
| v. | ) ) Case No.  18-cv-602-RJD |
| VENERIO SANTOS, et al., | ) ) ) |
|    Defendants. | ) |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Jeffrey Eastman, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Centralia Correctional Center ("Centralia"). Plaintiff alleges he suffers from a congenital deformity that causes his bones and ankles to become misaligned and collapse when bearing weight. Plaintiff proceeded in this case on the following claims:

> Count One: Santos, Mueller, Kink, Stock, Krebs, Downs, Johnson, McAbee, Walker, Zelasko, Wegman, Lahr, and Dr. Ritz showed deliberate indifference to Plaintiff's serious medical need involving a deformity and arthritis in his feet and pain associated therewith in violation of the Eighth Amendment.
>
> Count Two: IDOC violated the Americans with Disabilities Act and the Rehabilitation Act by failing to accommodate Plaintiff's needs related to a deformity and arthritis in his feet.

On May 14, 2020, the Court entered an order on the parties' motions for summary judgment (Doc. 272). In that Order, the Court granted the motion for summary judgment filed by Defendants IDOC, Ann Lahr, Robert Wegman, Deborah Zelasko, Susan Walker, and Lisa Krebs, and denied all other requests for summary judgment. The Court also notified Plaintiff that

summary judgment will be granted in favor of Defendants Robert Mueller, David Stock, and Kevin Kink, and that he should submit any evidence opposing summary judgment under Rule 56(f) by June 15, 2020.

Following the Court's Order on summary judgment motions, Plaintiff is proceeding on the following claims:

> Count One: Santos, Downs, Johnson, McAbee, and Dr. Ritz showed deliberate indifference to Plaintiff's serious medical need involving a deformity and arthritis in his feet and pain associated therewith in violation of the Eighth Amendment.

On the date the Court's Order was filed, Plaintiff filed a Motion to Reconsider Exhibit "M" as Evidence Admissible in Court (Doc. 269). Following the entry of the Order, Plaintiff filed a Motion in Opposition to Summary Judgment (Doc. 273). Plaintiff, through counsel, also filed a Notice of Submission of Evidence Opposing Summary Judgment in Favor of Defendants Mueller, Stock, and Kink (Doc. 288) and Motion for Leave to Take Depositions and Secure Expert (Doc. 284). The Court has reviewed these filings, and any responses thereto, and sets forth its rulings as follows.

**Motion to Reconsider Exhibit "M" as Evidence Admissible in Court (Doc. 269)**

Plaintiff asks that the Court reconsider its refusal to consider exhibit "M" as admissible evidence. Plaintiff asserts the Court determined this was video evidence in error. Plaintiff explains exhibit "M" is a medical definition of "AFO (Ankle-Foot Orthosis)" taken from a medical dictionary with a verified source page. Plaintiff's motion is **DENIED**. The material Plaintiff indicates will be on the disc is not readable and the Court finds that, in any event, consideration of the medical definition of AFO would have no bearing on the order on the parties' motions for summary judgment.

## MOTION IN OPPOSITION TO SUMMARY JUDGMENT (DOC. 273) AND NOTICE OF SUBMISSION OF EVIDENCE OPPOSING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS ROBERT MUELLER, DAVID STOCK, AND KEVIN KINK (DOC. 288)

In his motion in opposition, Plaintiff sets forth his opposition to the Court's order on Defendants' motion for summary judgment filed on May 14, 2020. In these filings, Plaintiff presents evidence opposing the entry of summary judgment in favor of Defendants Robert Mueller, Kevin Kink, and David Stock pursuant to Federal Rule of Civil Procedure 56(f).

By way of background, in his complaint, Plaintiff alleges he suffers from a congenital deformity that causes his bones and ankles to become misaligned and collapse when bearing weight. Plaintiff proceeded in this action on an Eighth Amendment claim of deliberate indifference to his serious medical need involving a deformity and arthritis in his feet and pain associated therewith against a number of defendants, including Mueller, Stock, and Kink.

Defendants Mueller, Stock, and Kink did not move for summary judgment, however, the Court evaluated the evidence and determined summary judgment would be appropriate. In making this determination, the Court found evidence that Plaintiff advised Mueller, Stock, and Kink that he was being restrained with a black box device while on court writs, and that this device caused issues with his ambulation. However, the Court found that the conversations Plaintiff had with Defendants were too isolated and brief to demonstrate personal liability and deliberate indifference to Plaintiff's complaints.

In the motion and notice now before the Court, Plaintiff attests that he first communicated to Defendant Mueller about his painful ankle and feet at the end of April or beginning of May 2016. In this regard, he submitted a request slip to Mueller complaining that he was not receiving proper treatment from Dr. Santos and Lisa Krebs. In this request slip, Plaintiff explained he had deformities in his feet that caused him to fall down frequently and experience severe pain.

Plaintiff attests that Mueller did not intervene; rather, he forwarded Plaintiff's request to Lisa Krebs in the healthcare unit. Plaintiff next communicated with Mueller through a grievance submitted in August 2016. In this grievance, Plaintiff detailed his continuing painful condition due to his deformity and complicated by arthritis. Plaintiff explained he needed to see a specialist and required treatment other than foam insoles, but was being refused. Mueller reviewed and signed off on the denial of this grievance. Plaintiff next communicated with Mueller through an Administrative Request dated June 28, 2017. Plaintiff again wrote that he had requested orthopedic shoes from Dr. Santos, but Dr. Santos refused to provide Plaintiff with the same and insisted on foam insoles, which did not alleviate Plaintiff's condition. Plaintiff also indicated that he could barely walk, was falling down frequently, and was getting arthritis due to his lack of proper treatment. Plaintiff again asked Mueller to arrange to have him seen by an orthopedic specialist. Plaintiff placed this request in the institutional mail, but never received a response.

Plaintiff was transferred to a correctional center in Jacksonville, Illinois on August 30, 2017; however, he returned to Centralia for a court writ on October 4, 2017. Upon arriving at Centralia, Plaintiff had a cane that had been issued by a doctor at the Jacksonville facility. A correctional officer told Plaintiff that despite having a doctor's order for the cane, Plaintiff would have to wear a "black box" device while being transported. Plaintiff attests it is obvious that it is not practically possible to use a cane while restrained in a black box device because the black box rigidly confines his hands, forcing one palm to face upward and the other downward. Thus, a black box restraint prevents an inmate such as Plaintiff from using a cane as intended because it is extremely difficult to hold and maneuver. Because of these obvious issues, Plaintiff asked that he be confined with a set of wrist chains or be provided with a wheelchair for his court writ. Major Johnson, the shift commander, arrived, and the officer told him about Plaintiff's cane and doctor's

order for the same.  The officer also told Johnson that Plaintiff had a "No Prolonged Standing" order.  Johnson told Plaintiff he could not have wrist chains because he was a moderate escape risk.  Johnson also refused Plaintiff's request for a wheelchair.  Johnson told Plaintiff he would need to wear the black box and would have to "figure it out."  Plaintiff was placed in the black box restraints for his court appearance on October 4, 2017.  In order to enter the courthouse, Plaintiff had to negotiate several series of steps and long ramps.  Plaintiff estimates there were at least 40-50 steps he had to walk up in order to get into the courthouse.  Plaintiff attests that navigating these steps took an inordinately long time and was very painful.

Upon his return to Centralia, Plaintiff submitted another request slip to Defendant Mueller and once again repeated that he had a walking disability, a deformity of his feet, and required a cane.  Plaintiff advised Mueller that a black box had been used on him on October 4, 2017, which kept him from using his cane and caused him extreme pain.  Mueller never responded to this request.  Shortly after this incident, Plaintiff saw Mueller and Plaintiff asked if he could have a wheelchair for his upcoming October 10, 2017 court date.  Mueller told Plaintiff he would get back to Plaintiff, but he never did.

Plaintiff also spoke to Defendant Kevin Kink before his next court appearance.  Plaintiff explained to Kink that he had problems with his feet and needed a cane.  Plaintiff asked Kink if he could have a wheelchair for his upcoming court date on October 10, 2017.  Plaintiff attests that as he spoke, Kink abruptly turned away from Plaintiff, showing indifference to Plaintiff's condition and request.  Kink began engaging with his phone and never followed-up with Plaintiff.

On October 6, 2017, while waiting in line for an identification check, Plaintiff spoke to Defendant Stock.  Plaintiff explained to Stock, a warden and head of disability at Centralia, that he had been issued a cane and had a "No Prolonged Standing" order.  Plaintiff indicated that he

needed a wheelchair for his upcoming court appearance. Stock asked how Plaintiff knew correctional officers would use a black box again, and Plaintiff explained that because they used it before, "it goes to reason that they will again." Stock became agitated with Plaintiff because Plaintiff was not looking him in the eyes while speaking to him. The conversation ended and Stock never followed-up on Plaintiff's request to not be placed in a black box restraint. Plaintiff was subsequently placed in a black box restraint on October 10, 2017, despite producing his paperwork to possess his cane. Plaintiff had difficulties ambulating on his court writ and the black box caused his wrists to swell and discolor.

In reviewing this evidence and the other evidence considered in the Court's Order dated May 14, 2020, the Court finds Plaintiff's repeated attempts to advise Defendant Mueller of his condition, the alleged improper treatment for said condition, and the repeated placement in a black box restraint, and Mueller's failure to address the same, could be found to amount to deliberate indifference. Accordingly, the Court will not enter summary judgment in favor of Defendant Robert Mueller pursuant to Rule 56(f).

The Court, however, does not find that Plaintiff has presented sufficient evidence for the Court to reconsider the entry of summary judgment in favor of Defendants Stock and Kink. The Court reiterates that the brief and limited interaction Plaintiff had with both Stock and Kink is insufficient to warrant personal liability under § 1983. *See Owens v. Duncan*, 788 F. App'x 371, 374 (7th Cir. 2019) (finding allegations that staff members who had a single interaction with the plaintiff did not amount to a plausible claim that the defendants knew of and disregarded a serious medical risk). In other words, the brevity and informality of the conversations Plaintiff had with these Defendants does not satisfy a finding that Defendants knew of and disregarded a serious risk to Plaintiff's health.

For these reasons, Plaintiff's Motion in Opposition to Summary Judgment (Doc. 273) is **GRANTED IN PART AND DENIED IN PART**.

Plaintiff shall proceed in this action on the following claim:

Count One: Santos, Downs, Johnson, McAbee, Dr. Ritz, and Mueller showed deliberate indifference to Plaintiff's serious medical need involving a deformity and arthritis in his feet and pain associated therewith in violation of the Eighth Amendment.

**MOTION FOR LEAVE TO TAKE DEPOSITIONS AND SECURE EXPERT (DOC. 284)**

Following the entry of an order on the parties' summary judgment motions, the Court assigned counsel to represent Plaintiff. Plaintiff, through counsel, filed the motion now before the Court asking he be granted leave to take Defendants' depositions and secure an expert in this case.

The IDOC Defendants object to Plaintiff's request, arguing discovery has closed and Plaintiff, while unrepresented, engaged in significant written discovery, serving several sets of interrogatories, requests for documents, and requests to admit. Defendants assert that Plaintiff has not shown the significant volume of discovery from Defendants that has already been produced is insufficient, and they ask that Plaintiff's motion be denied.

The Wexford Defendants also object to Plaintiff's motion. The Wexford Defendants assert that allowing Plaintiff to engage in the additional discovery he seeks is unnecessary, unduly burdensome, and prejudicial. Similar to the IDOC Defendants, the Wexford Defendants explain they have answered several sets of discovery over the course of one and one-half years. Defendants also argue the Court has correctly ruled that litigation of this matter does not require an expert witness for Plaintiff. Defendants also explain they have produced 832 pages of medical records to Plaintiff, and more than one hundred pages of other records. Finally, Defendants assert

they would be prejudiced in being forced to sit for their depositions at this point in the litigation as they have attempted to summarize all of the material facts necessary for the Court to evaluate the case sufficient to rule on the parties' summary judgment motions.

Plaintiff filed a reply in support of his motion and explains that prior to being assigned counsel he did not ably participate in discovery. Plaintiff describes his efforts as a "low level of inquiry" and notes that only his deposition has been taken. Plaintiff also asserts that many of the medical records that have been produced are difficult to read or illegible and ask that if the Court does not allow further depositions that he be allowed to identify at least 100 pages of produced records for Defendants to transcribe.

Here, the Court finds good cause to reopen discovery for the limited purpose of conducting depositions of Defendants. The Court finds such discovery would have been difficult to achieve when Plaintiff was unrepresented and will assist in preparing this matter for trial. The Court, however, declines to allow Plaintiff to conduct expert discovery. As set forth in the Court's order on April 4, 2019, determining deliberate indifference, the issue before the Court here, is generally not so complicated that an expert is required. *See Ledford v. Sullivan*, 105 F.3d 354, 358-59 (7th Cir. 1997), and Plaintiff has not provided a reason for the Court to reconsider this decision.

Accordingly, Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**. Plaintiff is **GRANTED LEAVE** to depose Defendants who are proceeding in this action. Said depositions shall be taken by **December 28, 2020**.

The trial and final pretrial conference dates are **VACATED**. Status conference is set for **December 14, 2020 at 10:00 a.m.** To join the call, the parties should call Judge Daly's conference line at 618-439-7731.

**IT IS SO ORDERED.**

**DATED: October 28, 2020**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**
